Filed 8/10/23  P. v. Williams CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>v.<br><br>KEIAN WADE WILLIAMS,<br><br>　　　Defendant and Appellant. | E078376<br><br>(Super. Ct. No. FVA023840)<br><br>OPINION |

APPEAL from the Superior Court of San Bernardino County.  Cara Hutson, Judge.  Reversed with directions.

Gene D. Vorobyov, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Alan L. Amann, and Christopher P. Beesley, Deputy Attorneys General, for Plaintiff and Respondent.

1

I.

INTRODUCTION

Keian Williams and his uncle, Julian Jones, robbed two men while they were sitting in a car. Williams ordered one of the victims to lie down in the back of the car, and Jones shot and killed him. Williams pled guilty to second-degree murder and was sentenced to 15 years to life.

Years later, Williams petitioned under Penal Code section 1172.6[1] (former section 1170.95) to have his murder conviction vacated. After an evidentiary hearing, the trial court denied the petition. Williams appeals, and we reverse and remand.

II.

FACTUAL AND PROCEDURAL BACKGROUND[2]

Alicia Fowlkes, Lilian Johnson, Williams, and Jones devised a plan to commit robberies. The plan was for Folkes and Lilian to try to lure men outside of a nightclub by flirting with them and then Williams and Jones would rob them.

The victims, Dwight Fleming and Mark Rodriguez, were in Fleming's car outside of the nightclub when Fowlkes and Johnson hailed them. Fleming pulled over and the four of them began chatting. Jones and Williams parked nearby and walked up to

---

[1] All further statutory references are to the Penal Code.

[2] The following facts are drawn largely from the transcript of Williams's preliminary hearing. We address his argument that the transcript was inadmissible below.

2

Fleming's car while Fowlkes and Johnson walked away.  Jones walked to the driver's side and Williams went to the passenger side.

Jones pointed a gun at Fleming's face and demanded his property while Williams demanded Rodriguez's property.  Williams then opened the door and told Rodriguez to get out.  Rodriguez complied while holding his hands up and Williams had him lie down in the backseat of the car.  Within seconds, Jones shot Rodriguez in the head.

Jones and Williams walked back to their car and got in.  Fleming got out of the car and opened the backdoor to check on Rodriguez, but immediately jumped back into the driver's seat, without shutting the back car door, because Jones and Williams had gotten out of their car and were walking toward him.  Fleming drove to a hospital, but Rodriguez died.

In 2007, Williams pled guilty to one count of second-degree murder and was sentenced to 15 years to life.  Williams did not appeal.  A jury convicted Jones and Johnson for Rodriguez's murder, and this court affirmed their convictions in unpublished opinions.  (*People v. Jones* (E048437), 2010 WL 4975659 [nonpub. opn.]; *People v. Johnson* (E042972), 2008 WL 2922392 [nonpub. opn.].)

After Senate Bill No. 1437 was enacted, Williams petitioned to have his conviction vacated.  The trial court found he had made a prima facie showing and ordered an evidentiary hearing.  In his brief, Williams asked the trial court to take judicial notice of our unpublished opinion affirming Jones's conviction.  The prosecution also asked the

3

trial court to take judicial notice of Williams's preliminary hearing transcript, among other evidence, and submitted a video recording of surveillance footage of the murder.

The trial court held the evidentiary hearing on Williams's petition on December 17, 2021. Before addressing the merits, the court and counsel discussed at length whether the court could consider the preliminary hearing transcript and this court's unpublished opinions affirming Jones's and Johnson's convictions.

Counsel did not object to the court's consideration of this court's opinions, and everyone agreed that, effective January 1, 2022, the transcript would no longer be admissible at an evidentiary hearing on Williams's petition due to the enactment of Senate Bill No. 775 (SB 775). The prosecutor, however, argued that the law in effect at the time of the hearing controlled, stating that "the People are presuming and proceeding based on what the current state of the law is."

Defense counsel stated that he did not "necessarily want the preliminary hearing [transcript] coming in" because it contains inadmissible hearsay. Counsel explained, however, that he would not object to its admission because he was in "an awkward position" where the transcript was "the only source of information for the Court to base its decision on."

The trial court therefore ruled that the preliminary hearing transcript was admissible "since that is the only evidence," and proceeded with the hearing "at the expense of having to do this all over in another three years" due to the potential retroactive application of SB 775's evidentiary provisions.

4

After a lengthy hearing, the trial court explained its decision denying Williams's petition. The court noted at the outset that "I really started paying attention" when the video recording of the incident started because "it made [Williams's actions] even clearer." The court made no finding as to whether Williams had a gun, but explained, "What the Court knows from reading the opinion from Mr. Fleming's testimony is that not only was a gun held to his temple, he was actually being violently pistol-whipped with that weapon. The Court read that in several opinions from the testimony that counsel got to cross-examine on." Given that context from this court's opinions, the court saw in the video that Williams could have acted differently, but he instead had Rodriguez lie down in the back of the car, which the court found to be "tantamount to an action of execution."

In the court's view, it could not grant the petition knowing that "the video shows no reaction when the gun went off." Instead, Williams seemingly looked in the front seat, left the door open, and walked away with Jones. Then, when Fleming got out of his car, the court found that the video showed "two ominous individual[s] which scared Mr. Fleming back into the car."

The court then found, "just looking at the video in combination with the facts clearly shows" that Williams was a major participant who acted with reckless disregard for human life. The court therefore denied his petition.

## III.

## DISCUSSION

Williams argues the trial court erroneously denied his section 1172.6 petition because there is insufficient evidence that he acted with reckless indifference to human life and, in any event, his trial counsel was ineffective. In making his first argument, Williams contends the evidentiary rule changes created by SB 775 apply retroactively here.

We need not decide whether the evidentiary provisions enacted by SB 775 apply retroactively here because, regardless of whether they do apply, we conclude that the appropriate course is to reverse and remand the matter for the trial court to conduct a new evidentiary hearing. As a result, we need not address Williams's claim that his counsel was ineffective.

A. *Governing Law*

Effective January 1, 2019, the Legislature passed Senate Bill 1437 (2017-2018 Reg. Sess.) "'to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.'" (*People v. Lewis* (2021) 11 Cal.5th 952, 959; Stats. 2018, ch. 1015, § 4.)

Senate Bill No. 1437 also created a procedure for offenders previously convicted of felony murder or murder under the natural and probable consequences doctrine to seek

6

retroactive relief if they could no longer be convicted of murder under the new law. (§ 1172.6, subd. (a); *People v. Gentile* (2020) 10 Cal.5th 830, 843; *People v. Lewis*, *supra*, 11 Cal.5th at p. 959; *People v. Strong* (2022) 13 Cal.5th 698, 708.) "[T]he process begins with the filing of a petition containing a declaration that all requirements for eligibility are met [citations], including that '[t]he petitioner could not presently be convicted of murder or attempted murder because of changes to . . . [s]ection 188 or 189 made effective January 1, 2019 . . . .'" (*People v. Strong*, *supra*, at p. 708.) "When the trial court receives a petition containing the necessary declaration and other required information, the court must evaluate the petition 'to determine whether the petitioner has made a prima facie case for relief.' [Citations.]" (*Ibid*., citing § 1172.6, subd. (c).) If the defendant makes a prima facie showing of entitlement to relief, the court must issue an order to show cause and hold an evidentiary hearing to determine whether relief should be granted. (§ 1172.6, subds. (c), (d)(3).)

In 2021, "the Legislature modified section 1170.95 both substantively and procedurally by the passage of [SB 775]," which went into effect on January 1, 2022. (*People v. Owens* (2022) 78 Cal.App.5th 1015, 1026.) As relevant here, SB 775 modified section 1170.95 (now section 1172.6) to specify that the Evidence Code shall apply to evidentiary hearings on an order to show cause, and "[t]his may mean that, absent some exception, hearsay contained in probation, presentence reports, appellate

7

opinions/orders, and other documents, are not now admissible at a section 1170.95 hearing."[3] (*Ibid.*)

   B. *Retroactivity of SB 775*

Several appellate courts have held that other, substantive provisions of SB 775 apply retroactively (see, e.g., *People v. Porter* (2022) 73 Cal.App.5th 644, 651-652), but no published decision has squarely held that the evidentiary provisions at issue here apply retroactively with meaningful analysis. One court broadly held that the "procedures within section [1172.6]," including section 1172.6, subdivision (d)(3)'s evidentiary provisions, apply retroactively. (*People v. Basler* (2022) 80 Cal.App.5th 46, 56.) Another court suggested that the provisions would not apply retroactively, but did not "definitively rule" on the issue. (*People v. Owens*, *supra*, 78 Cal.App.5th at p. 1027; see also *id*. at p. 1028 [conc. opn. of Tangeman, J.] ["The majority's pronouncements on [the retroactivity of SB 775] are dicta because the appellant did not raise [SB] 775."].)

Although Williams argues in his opening brief that SB 775's evidentiary provisions apply retroactively, the People do not address the issue in their brief. We need

---

[3] Section 1172.6, subdivision (d)(3) now provides in relevant part: "The admission of evidence in the hearing shall be governed by the Evidence Code, except that the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed. The court may also consider the procedural history of the case recited in any prior appellate opinion. However, hearsay evidence that was admitted in a preliminary hearing pursuant to subdivision (b) of [s]ection 872 shall be excluded from the hearing as hearsay, unless the evidence is admissible pursuant to another exception to the hearsay rule . . . ."

8

not decide the issue because a remand is appropriate whether or not the provisions apply retroactively.

C. *Analysis*

We first assume without deciding that the evidentiary provisions of section 1172.6, subdivision (d)(3), as amended by SB 775, apply retroactively. In similar situations where the retroactive application of a new statutory procedure would benefit the defendant, our Supreme Court has concluded that the proper remedy is to remand for further proceedings under the new statutory scheme. (See, e.g., *People v. Padilla* (2022) 13 Cal.5th 152, 158-159; *People v. Frahs* (2020) 9 Cal.5th 618, 637-640; *People v. Superior Court (Lara)* (2018) 4 Cal.5th 299, 310, 313.) Following the Court's guidance from these cases, we conclude that even if SB 775's evidentiary provisions apply retroactively, the appropriate course is to remand the matter for a new evidentiary hearing under the law now in effect.

We would reach the same conclusion even if we were to hold that SB 775's evidentiary provisions apply only prospectively. Assuming we so held, Williams still could file a new section 1172.6 petition, which would be decided by the law now in effect. (See *People v. Farfan* (2021) 71 Cal.App.5th 942, 949-951.) Under section 1260, we have the authority to "remand the cause to the trial court for such further proceedings as may be just under the circumstances." It would be a waste of judicial resources to affirm the trial court's order denying Williams's petition and require him to refile a new

9

petition. We therefore conclude the most appropriate disposition is to remand the matter for a new evidentiary hearing under section 1172.6, as amended by SB 775.

D. *Harmless Error*

In response to Williams's ineffective assistance claim, the People argue that he cannot show prejudice. They argue that his counsel's failure to object to the trial court's consideration of the preliminary hearing transcript and this court's opinion was harmless because the trial court found the surveillance footage video to be "dispositive," regardless of the other evidence. We will address the argument even though the People do not address whether SB 775 applies retroactively because, if correct, remand would be futile. (See *People v. Ellis* (2019) 43 Cal.App.5th 925, 946.)

We disagree with the People's reading of the trial court's ruling. The surveillance footage video was no doubt central to the trial court's analysis, but it was not the only evidence the court relied on. The trial court stated that it learned "from reading [this court's] opinion[s]" that Williams was aware that Jones held a gun to Fleming's head and "violently pistol-whipped [him]." "Just looking at the video *in combination with the facts*" drawn from this court's opinions, the trial court found that Williams was not entitled to relief because he was a major participant and acted with reckless disregard for human life.

It would be difficult, if not impossible, for the trial court to have found the video "dispositive" without considering other evidence. The video is grainy, poor quality, and much of Jones's key conduct—including pistol-whipping and shooting Rodriguez—is out

10

of frame. The trial court could not understand what the video captured without other evidence giving it context.

We therefore conclude it is reasonably probable that Williams may have received a more favorable outcome had the trial court been required to disregard some of the evidence it had previously relied upon under SB 775's amendments. (See *People v. Myles* (2021) 69 Cal.App.5th 688, 706 [*Watson* standard applies to erroneous admission of evidence at hearing on section 1172.6 petition for resentencing].) As a result, we cannot conclude that the trial court's reliance on our opinions was harmless.

IV.

DISPOSITION

The trial court's order denying Williams' section 1172.6 petition for resentencing is reversed, and the matter is remanded for the trial court to conduct a new evidentiary hearing pursuant to the provisions of section 1172.6 currently in effect.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:

RAMIREZ
P. J.


FIELDS
J.

11